UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| URIEL LEVI <br><br>                Plaintiff, <br><br><br>         v. <br><br><br> NEW YORK STATE ASSEMBLY, NEW YORK STATE SENATE, SHELDON SILVER, DEAN G. SKELOS, JEFFREY D. KLEIN, THE STATE OF NEW YORK, <br><br>             Defendants. | 13 Civ. 00438 <br><br><br> **OPINION** |

      Plaintiff, Uriel Levi, individually and as father and natural guardian of Elisheva Levi, an infant, brings this civil action under 42 U.S.C. § 1983 against the following defendants:  (1) the State of New York, (2) the New York State Assembly and New York State Senate, and (3) the following state legislators—Sheldon Silver, Speaker of the New York State Assembly, and Chair of the Assembly Rules Committee; Dean G. Skelos, President Pro Tempore of The New York State Senate, Chair of the Senate Republican Conference Committee, and Chair of the Senate Rules Committee; and Jeffrey D. Klein, President Pro Tempore of the New York State Senate, and Chair of the Senate Independent Democrat Conference.  Levi alleges that defendants violated his as well his

daughter's constitutional rights by failing to include private schools within the coverage of Project SAVE ("Safe Schools Against Violence in Education")—a set of laws passed to protect public school students from sexual abuse by public school employees.  Levi seeks declaratory and injunctive relief, requiring defendants to extend Project SAVE to private schools.

The defendants move to dismiss the complaint.  The motion to dismiss is granted on the basis that defendants are protected by sovereign and legislative immunity.

### The Complaint

The following facts are drawn from the complaint and assumed to be true for purposes of the motion.

Levi is an Orthodox Jew and his daughter—Elisheva Levi—attends a private, Modern-Orthodox Jewish school located in Nassau County, New York. Levi alleges that there have been repeated instances of child abuse in private schools, especially religious schools, and that school officials are not taking sufficient steps to protect the students.  In particular, Levi alleges that the Ultra-Orthodox Jews, rather than the Modern-Orthodox Jews, have worked to prevent government legislation that would reform private school practices to prevent child abuse.

In 2001, the New York State Assembly and Senate considered Project SAVE.  The bill mandated that New York public schools: (1) conduct fingerprinting and criminal history background checks for all public school job

applicants throughout New York, (2) report to law enforcement all instances of abuse committed by public school employees upon public school students, (3) end secret agreement policies, or "silent resignations", whereby public schools agree not to report to law enforcement those public school employees accused of abuse so long as the employees resign, and (4) require school safety plans.

When considering Project SAVE, legislators consulted with private school officials.  The legislators sought the school officials' opinion as to whether Project SAVE should also cover private schools.  In particular, Levi alleges that the Legislature consulted with private school officials at religious schools— namely, Catholic and Ultra-Orthodox Jewish institutions.  Levi alleges that these school officials, without consulting with the parents of their school children, advised the legislators that they did not want the bill to cover the religious schools.

The New York State Legislature passed Project SAVE and the Governor signed it into law.  The legislation did not include private schools in its coverage.

Through their failure to extend the Project SAVE legislation to include religious schools, defendants, according to Levi, have violated his as well as his daughter's constitutional rights.

First, Levi alleges that defendants have denied both him and his daughter their right to equal protection of the law under the Fourteenth Amendment.  Namely, by having to attend a school where the teachers are not

subject to background checks, Levi's daughter does not have the same protection and security as students in public schools.

Second, Levi claims that the defendants have infringed upon the liberty clause of the Fourteenth Amendment. In exempting religious schools from Project SAVE, the defendants, according to Levi, have constructively abrogated the constitutional right of children to attend religious schools and the rights of parents to send their children to religious schools because the schools cannot ensure the students' safety.

Third, Levi alleges that defendants have infringed upon his as well his daughter's First Amendment right to freely exercise their religion. The defendants, through failing to include religious schools in Project SAVE, have created an unsafe educational environment for students, like Levi's daughter Elisheva, that threatens both children's right to practice their religion and impairs the parents' right to send their children to religious school.

Fourth, Levi claims that defendants have violated the Establishment Clause of the First Amendment. Specifically, by declining to extend Project SAVE to private schools, the Legislature prioritized the values of the Ultra-Orthodox, who were strongly against the legislation, as opposed to the Modern-Orthodox Jews, like the plaintiff who had had a less-defined position on the legislation. As a result, Levi alleges that the Legislature has endorsed the form of Judaism practiced by the Ultra-Orthodox.

Levi requests that the court issue a declaratory judgment stating that defendants have violated his as well as his daughter's constitutional rights and requiring defendants to pass legislation extending Project SAVE to private schools.

## Discussion

Defendants raise several defenses to Levi's claims: (1) defendants are protected from suit by sovereign and legislative immunity, (2) Levi does not have standing to file suit against defendants, and (3) Levi has failed to state a claim for which relief can be granted.  The court need not address all of defendants' arguments as the court finds that defendants are protected from suit by sovereign and legislative immunity.

In the complaint, Levi names multiple defendants—the State of New York, the New York State Assembly and New York State Senate, and individual members of the State Senate and State Assembly.  The court will address each defendant in turn.

The Eleventh Amendment prevents Levi from filing suit against the State of New York.  The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It has been interpreted to prevent federal courts from exercising jurisdiction over suits brought by citizens of a

state against the state or the state's agencies." MCI Telecommunications

Corporation v. New York Telephone Company, 134 F. Supp. 2d 490, 496

(N.D.N.Y. 2001).

It is true that there are limits to state sovereign immunity.  Congress

may enact a statute that abrogates state immunity and subjects the states to

suit. See In Re Deposit Insurance Agency, 482 F. 3d 612, 617 (2d Cir. 2007)

(citing Tennessee v. Lane, 541 U.S. 509, 517 (2004)).   Also, a state may waive

its Eleventh Amendment immunity- for example, by voluntarily invoking federal

jurisdiction, as when the state itself brings a federal suit or removes a case

from state to federal court. Id.  However, in this case, Congress has not

sanctioned, nor has the State of New York consented to the present litigation.

Accordingly, the cause of action against the State of New York is dismissed.

Both the New York State Assembly and the New York State Senate are

also protected from suit by the doctrine of sovereign immunity.  A

governmental entity that is "like an arm of the state" is entitled to Eleventh

Amendment immunity. See Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir.

2009) (quoting Woods v. Rondout Valley Central School District Board of

Education, 366 F.3d 232, 236 (2d Cir. 2006)).  Surely, the Legislature is an

arm of the state and protected from suit by sovereign immunity.  See Gollump

v. Spitzer, 568 F.3d at 366.  Thus, the cause of action against the New York

State Assembly and the New York State Senate is dismissed.

6

The doctrine of legislative immunity prevents Levi from filing suit against the individually named legislators.  The legislators are not protected by sovereign immunity because "under the venerable doctrine of <u>Ex parte Young</u>, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity-notwithstanding the Eleventh Amendment-for 'prospective injunctive relief' from violations of federal law." <u>In re Deposit Insurance Agency</u>, 482 F.3d at 617.  In his complaint, Levi has alleged violations of federal law pursuant to § 1983 and named the following defendants in their official capacity: (1) Sheldon Silver—Speaker of the New York State Assembly and Chair of the Assembly Rules Committee, (2) Dean G. Skelos—President Pro Tempore of the New York State Senate, Chair of the Senate Republican Conference Committee, and Chair of the Senate Rules Committee, and (3) Jeffery D. Klein—president Pro Tempore of the New York State Senate and Chair of the Senate Independent Democrat Conference.

While under <u>Ex Parte Young</u> a plaintiff may file suit against a state official, the Supreme Court has held that state legislators are protected by legislative immunity.  State legislators are immune from suit under § 1983 actions for declaratory or injunctive relief. <u>See</u> <u>Supreme Court of Virginia v. Consumers Union of U.S., Inc.</u>, 446 U.S. 719, 732 (1980).  The Court explained that "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention

from their legislative tasks to defend the litigation." Id. at 733 (quoting

Eastland v. United States Servicemen's Fund, 421 US 491, 503 (1975)).

Legislators are entitled to absolute immunity—both in their official and

individual capacity—when they are performing legislative functions.  See

Schubert v. City of Rye, 775 F.Supp. 2d 689, 701 (S.D.N.Y. 2011).  "Courts

apply a functional test to determine whether an act is legislative, which focuses

'not on the official's identity, or even on the official's motive or intent, but on

the nature of the act in question.'" Id. (quoting State Employees Bargaining

Agent Coalition v. Rowland, 494 F.3d 71, 82 (2d Cir. 2007)).  "Absolute

legislative immunity attaches to all actions taken in the sphere of legitimate

legislative activity." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998).  There is no

doubt that through their involvement in the Project SAVE legislation, the state

legislators in this case were involved in legislative activity. Accordingly, the

state legislators have absolute immunity from Levi's suit.

On June 26, 2013, Levi filed a cross motion to amend his complaint and

for summary judgment.  In particular, Levi moved to amend his complaint to

also name each legislator in his individual capacity.  However, given that

legislators have absolute immunity when performing legislative activities, see

Schubert v. City of Rye, 775 F.Supp. 2d at 701, Levi has proposed a futile

amendment and thus, the court denies the motion to amend the complaint.

See Lipton v. New York University College of Dentistry, 865 F. Supp. 2d 403,

407 (S.D.N.Y. 2012).  Furthermore, the court need not reach Levi's motion for summary judgment as the court finds that this case is dismissed.

### Conclusion

Defendants' motion is granted and the case is dismissed.  This opinion resolves the motions listed as item numbers 19 and 23 on the docket.

SO ORDERED.

Dated:  New York, New York

January 29, 2014

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/29/14

Thomas P. Griesa

U.S. District Judge